UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON PESCH, | No. C-13-05317 DMR |
| Plaintiff(s), | |
| v. | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 56]** |
| INDEPENDENT BREWERS UNITED CORPORATION AND NORTH AMERICAN BREWERIES INC, | |
| Defendant(s). | |

Before the court is a joint discovery letter filed by Plaintiff Simon Pesch and Defendants Independent Brewers United Corporation and North American Breweries, Inc. [Docket No. 56.] In this letter, Plaintiff argues that Defendants have failed to meet the expert witness disclosure requirements of Federal Rule of Civil Procedure 26 for Ryan Pappe and Mark House, two individuals that Defendants disclosed as experts. The court finds that this matter is appropriate for resolution without oral argument pursuant to Civil L.R. 7-1(b).

For the reasons stated below, the court finds that Pappe and House are not qualified to provide expert testimony on the topics designated by Defendants.

## I. BACKGROUND

The court has summarized the factual background of this case elsewhere. *See* Docket No. 46. In brief, Defendants employed Plaintiff as Head Brewer (among other positions) until June

2013.  Defendants treated Plaintiff as exempt from California's overtime pay requirements while he held that position.  Following his termination in June 2013, Plaintiff filed suit against Defendants.  Plaintiff alleges that notwithstanding his title, Defendants cannot prove he spent the majority of his time performing exempt managerial tasks.  Instead, he alleges that he performed line brewing tasks alongside his hourly subordinates as well as other non-managerial tasks, such as sweeping, loading sacks of raw materials, and pumping thousands of gallons of water and beer between the different areas of the brewery.

Plaintiff claims that Defendants wrongly failed to pay him overtime from June 2009 to June 2013, resulting in various violations of California Industrial Welfare Commission Wage Orders and Labor Code sections.

## II.  LEGAL STANDARDS

Under the Federal Rules, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702." Fed. R. Civ. P. 26(a)(2)(A).

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  "[T]he proponent [of the proposed expert] has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, Advisory Committee's note to 2000 Amendment.

Rule 702 requires "the trial judge [to] ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  "Although the district court must perform a gatekeeping function, a trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *United States v. Gadson*, 763 F.3d 1189, 1202 (9th Cir.

1  2014) (citation omitted).  Furthermore, "[t]he trial court, acting as gatekeeper, is required to assess,

2  'pursuant to Rule 104(a), whether the expert is proposing to testify to' scientific, technical, or other

3  specialized knowledge that will help the factfinder understand or decide a fact in issue." *Alatorre*,

4  222 F.3d at 1102 (quoting *Daubert*, 509 U.S. at 592); Fed. R. Evid. 104(a) ("The court must decide

5  any preliminary question about whether a witness is qualified . . . .  In so deciding, the court is not

6  bound by evidence rules, except those on privilege.").

7      The inquiry into whether the testimony meets the requirements of Rule 702 is "a flexible

8  one." *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000).

## II. DISCUSSION

10      On December 15, 2014, Defendants disclosed Pappe and House as "non-retained experts,"

11  and served limited disclosures for each of them pursuant to Rule 26(a)(2)(C).  Pappe is the Head

12  Brewer of Defendants' brewery in Portland, Oregon.  It does not appear that he has worked in the

13  Berkeley brewery that is at issue in this case.  House is Defendants' Director of Craft Breweries and

14  Corporate Distribution.  House is based in New York, but was in charge of Defendants' Berkeley

15  brewery for the last five months of Plaintiff's employment.[1]

16      Defendants' non-retained expert disclosures state fifty "subject matters" about which House

17  and Pappe are expected to present evidence, as well as a "summary of [the expert's] facts and

18  opinions" on each topic.  The "summaries" add no further detail regarding the proposed expert's

19  planned testimony.  The subject matters generally concern Defendants' documentation, the job

20  duties of a Head Brewer, the training and supervision by a Head Brewer of his subordinates, and the

21  process by which beer is brewed in the Defendants' breweries and other breweries generally.  For

22  example, the first ten subject matters for both Pappe and House are as follows:

> 1. Explain the purpose of Defendants' documentation regarding the brewing process, including Brew Sheets, Fermentation Logs, and Bright Tank Reports;
>
> 2. Explain what Defendants' Brew Sheets and other documentation reveal about how much time Pesch spent brewing;

---

[1] In their initial disclosures, Defendants disclosed House and Pappe as individuals likely to have discoverable information. *See* Docket No. 62. Plaintiff deposed House on April 9, 2014; Plaintiff elected not to depose Pappe since Pappe had been disclosed only on the subject of Pappe's duties as Head Brewer of the Portland Brewery. *Id.*

3. Explain what Defendants' time punch records and other documentation reveal about whether time Pesch spent brewing was exempt or managerial in nature;

4. Explain the job duties of the Head Brewer in a craft brewery of the type of the Berkeley Brewery;

5. Explain and opine that the Head Brewer in a craft brewery of the type of the Berkeley Brewery has duties and responsibilities that involve the management of a customarily recognized department, i.e., the Brewing Department;

6. Explain and opine that the Head Brewer in a craft brewery of the type of the Berkeley Brewery customarily and regularly directs the work of two or more employees;

7. Explain and opine that the Head Brewer in a craft brewery of the type of the Berkeley Brewery has the authority to make suggestions and recommendations as to the hiring or firing and as to the advancement and promotion of subordinates that are given weight;

8. Explain and opine that the Head Brewer in a craft brewery of the type of the Berkeley Brewery customarily and regularly exercises discretion and independent judgment;

9. Explain and opine that the Head Brewer in a craft brewery of the type of the Berkeley Brewery spends most of his time on tasks that are exempt or managerial in nature;

10. Explain the process by which beer is brewed in a craft brewery of the type of the Berkeley Brewery.

Letter at Ex. A at 2-3, 11-12.

On January 26, 2015, the court issued an order requiring Defendants to provide supplemental briefing. The court stated, "Defendants' summary of the facts and opinions about which Pappe and House will testify does not appear to disclose topics that are properly the subject of expert testimony under Rule 702 . . . . This case involves Plaintiff's claim that Defendants wrongly failed to pay him overtime as the result of their improper designation of him as an exempt managerial employee. The facts and opinions about which Pappe and House will testify appear to be either irrelevant to the straightforward wage and hours claims at issue, or matters within Pappe and House's personal knowledge rather than based on scientific, technical, or other specialized knowledge." Order [Docket No. 57] at 2-3.

In response, Defendants provided supplemental briefing that included additional descriptions of the anticipated testimony of House and Pappe, as well as argument about why the anticipated testimony qualified as expert testimony under Rule 702. Specifically, Defendants stated:

> [In order to] establish this affirmative defense [that Plaintiff was properly classified as an exempt employee], Defendants must [show] . . . (1) Plaintiff's "duties and responsibilities involve management" of Defendants' business; (2) Plaintiff "customarily and regularly

4

    directs the work of two or more employees;" (3) Plaintiff "has the authority to authority to hire or fire employees;" (4) Plaintiff regularly exercises discretion and independent judgment;" and (5) Plaintiff "performs executive duties more than half of the time." CACI 2720. Critically, to make this determination, the jury must not only consider how Plaintiff actually spent his time at work, but "also consider whether [Plaintiff's] practice differs from [Defendants'] realistic expectations of how [Plaintff] should spend [his] time and the realistic requirements of the job." *Id.* (emphasis added); *see Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (1999) (providing the same).

    Pappe's and House's anticipated testimony is directly relevant to the inquiry described above and, as such, "will help the [jury] . . . understand the [other] evidence [in this case] or . . . determine a fact in issue." Fed. R. Evid. 702(a) (setting forth relevance requirement for expert testimony). For example, Pappe and House are expected to testify that as Head Brewer Plaintiff's job duties included supervising subordinate shift brewers (Subject No. 12); will explain how and why supervising shift brewers requires the exercise of independent judgment and discretion (Subject No. 13); and will explain how performing this managerial duty, among others, consumed more than half of Plaintiff's time at work (Subject No. 9). Such testimony speaks directly to elements one, four, and five of CACI 2120. Such testimony also helps demonstrate the realistic expectations and requirements of Plaintiff s job with respect to supervising subordinates.

    . . . .

    [T]he subjects on which Pappe and House are anticipated to testify are not based solely on their percipient or common knowledge. Although Pappe and House will base their testimony in part on what they personally observed at the Berkeley Brewery, they will also explain the technical process of brewing craft beer (Subject 10) and, based on their specialized knowledge, explain how a Head Brewer managing a craft brewery must perform duties that require the exercise of independent judgment and discretion (Subjects 4-5, 8-9, 14-15, 24-25). This includes tasks such as documenting the brewing process (Subjects 1-2, 20-23); determining production techniques (Subjects 33, 28); hiring and firing subordinates (Subjects 7, 26); delegating work to subordinates (Subjects 34, 36); supervising subordinates (Subjects 11-13, 29, 31-32, 37, 41); scheduling subordinates (Subjects 18-19,43-44); training subordinates (Subjects 16-17); and evaluating subordinates (Subjects 27, 30, 40, 47). All of this testimony will be based on Pappe and House's specialized knowledge of craft brewing and brewery management, which are subjects outside a layperson's understanding.

Docket No. 58 at 2-3.

       Having considered Defendants' second attempt to explain how the anticipated testimony of House and Pappe meet the requirements for expert testimony under Rule 702, the court remains unpersuaded. Notably, Defendants do not even attempt to argue that testimony about Plaintiff's job duties, task allocation, and exercise of independent judgment over tasks such as documenting the brewing process or hiring and firing subordinates requires "scientific, technical, or other specialized knowledge." To the extent Defendants suggest that these witnesses possess specialized knowledge about "the technical process of brewing craft beer," the court finds that such testimony is not central to Plaintiff's wage and hours claims. This is not a case about misappropriation of beer brewing

5

trade secrets. This is a wage and hour exemption case. In order to determine the exemption question, the factfinder will require information about how the tasks of a Head Brewer support the tasks associated with the brewing process. Such testimony may well include descriptions of how craft beer is brewed. Factfinders routinely are tasked with learning things about which they have no prior knowledge. The level of information about craft beer brewing that will be appropriate to elicit in this wage and hour case will be well within a factfinder's ability to comprehend for purposes of reaching decisions on the legal questions presented. For this reason, proposed expert testimony regarding the "technical process" of craft beer brewing will not be "helpful to understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 702(b).

Accordingly, the court finds that House and Pappe are not qualified to testify as expert witnesses. In coming to this conclusion, the court does not reach the issues of whether the proposed testimony by House or Pappe is relevant, e.g., to determining Defendants' reasonable expectations for Plaintiff's job pursuant to *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (1999), or whether House and Pappe may provide opinion testimony as lay witnesses pursuant to Federal Rule of Evidence 701.

House and Pappe were previously disclosed as individuals likely to have discoverable information. Plaintiff deposed House, and chose not to depose Pappe. Therefore, Plaintiff may not depose Pappe or seek a further deposition of House.

IT IS SO ORDERED.

Dated: February 8, 2015



_____
DONNA M. RYU
United States Magistrate Judge

6